IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HEVER L SANTOS RAMOS,

    Petitioner,

        v.                              Civil Action No. 3:26-cv-488

JEFF CRAWFORD, *et al.,*

    Respondents.

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner Hever Luisander Santos Ramos' ("Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition"). (ECF No. 1.) In the Petition, Mr. Santos Ramos challenges his detention by Immigration and Customs Enforcement ("ICE"), arguing that ICE's failure to provide him with a bond hearing under 8 U.S.C. § 1226 violates his statutory right to such a hearing and his constitutional right to due process under the Fifth Amendment to the United States Constitution.[1] (ECF No. 1 ¶¶ 42–45.)

For the reasons articulated below, the Court will grant the Petition. (ECF No. 1.) The Court will order Respondents to provide Mr. Santos Ramos with a bond hearing under 8 U.S.C. § 1226(a).

---

[1] The Fifth Amendment to the United States Constitution provides, in pertinent part:

> No person shall . . . be deprived of life, liberty or property without due process of law.

U.S. Const. amend. V.

## I. Factual and Procedural Background

### A.        Factual Background[2]

Mr. Santos Ramos is a citizen and native of Honduras.  (ECF No. 1 ¶ 11.)  "On or about March 30, 2019, at age 15 and unaccompanied by any parent or legal guardian," Petitioner entered the United States "without inspection near Hidalgo, Texas."  (ECF No. 1 ¶ 11.)  At the time of his entry into the United States, "[f]ederal officials designated Petitioner as an unaccompanied alien child," transferred him "to the custody of the Office of Refugee Resettlement," then "released him to his father . . . in Henrico, Virginia."  (ECF No. 1 ¶ 12.) These "[f]ederal officials" released Mr. Santos Ramos to his father "pursuant to the framework established by" 8 U.S.C. §§ 1232(b)(3) and (c)(3).[3]  (ECF No. 1 ¶ 12.)  "Petitioner was *not* released [to his father] pursuant to a discretionary grant of parole under 8 U.S.C. § 1182(d)(5)(A)."  (ECF No. 1 ¶ 12 (emphasis in original).)

Mr. Santos Ramos "has lived continuously in Virginia for more than seven years."  (ECF No. 1 ¶ 13.)  He is employed full time and is the "principal financial provider for his household." (ECF No. 1 ¶ 13.)  Mr. Santos Ramos has "a pending Form I-589 application for asylum and withholding of removal before USCIS that was filed on April 8, 2021."  (ECF No. 1 ¶ 13.)

---

[2] As discussed below, the Court proceeds by dispelling with additional briefing and incorporating Respondents' filings in this Court's decision in *Duarte Escobar v. Perry*, 3:25-cv-758 (MHL) (E.D. Va. 2025).  Respondents have recently represented to the Court that "the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in *Duarte Escobar*."  (ECF No. 4, at 1.)  Accordingly, the Court's recitation of the factual background relies on the facts as alleged in the Petition.

[3] These provisions govern "[t]ransfers of unaccompanied alien children" and "[s]afety and suitability assessments" for unaccompanied alien children.  8 U.S.C. §§ 1232(b)(3) and (c)(3).  Neither provision is relevant to the issues raised in Mr. Santos Ramos' Petition.

On April 20, 2026, ICE officials "took Petitioner into custody from the Henrico County Jail pursuant to a Form I-247A detainer and a Form I-200 administrative warrant of arrest." (ECF No. 1 ¶ 14.)  On April 21, 2026, ICE served Mr. Santos Ramos with a Notice to Appear[4] ("NTA") charging him with being an "alien present in the United States without being admitted or paroled" and removable under 8 U.S.C. § 1182(a)(6)(A)(i).  (ECF No. 1 ¶ 15 (citation omitted).)  "The agency did not check the box marked 'arriving alien.'"  (ECF No. 1 ¶ 15 (citation omitted).)

On May 11, 2026, Mr. Santos Ramos "moved for bond redetermination under 8 U.S.C. § 1226(a) before the Annandale Immigration Court."  (ECF No. 1 ¶ 17.)  On May 15, 2026, Petitioner attended a bond redetermination hearing before the Immigration Court, during which the Immigration Judge determined that he "lacked jurisdiction" to grant Petitioner's request for bond, citing the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  (ECF No. 1 ¶ 17.)[5]  Mr. Santos Ramos seeks release from custody or a Court order requiring the Immigration Court to hold a bond hearing.  (ECF No. 1, at 16.)

**B.    Procedural Background**

On May 29, 2026, Mr. Santos Ramos filed the instant Petition.  (ECF No. 1.)  On June 2, 2026, the Court ordered Respondents to file a notice indicating whether the factual and legal issues presented in the Petition differ in any material fashion from those presented in *Duarte*

---

[4] A Notice to Appear is a "'[c]harging document' that 'initiates a proceeding before an Immigration Judge.'" *Hasan v. Crawford*, 800 F. Supp. 3d 641, 648 n.3 (E.D. Va. 2025).

[5] On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado*. "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Soto v. Soto*, 807 F. Supp. 3d 397, 401 (D.N.J. 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

3

*Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va. 2025). (ECF No. 3.) The Court further ordered that, if Respondents indicated that the factual and legal issues presented in the Petition do not differ in any material fashion from those presented in *Duarte Escobar*, "each of the substantive filings in [*Duarte Escobar* would] be incorporated into this habeas proceeding, and this Court [would] issue a ruling without further filings from the parties." (ECF No. 3, at 1–2.)

On June 4, 2026, Respondents filed a Notice in response to the Court's June 2, 2026 Order. (ECF No. 4.) In the Notice, Respondents "submit that the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in *Duarte Escobar*[.]" (ECF No. 4, at 1.) "[C]onsistent with [the Court's] recent order," Respondents contend that "this Court should incorporate the filings in *Duarte Escobar* into the record of this habeas action." (ECF No. 4, at 1.)

The Court incorporates the parties' merits briefing in *Duarte Escobar* into the record. *See Duarte Escobar*, No. 3:25-cv-758 (MHL), ECF Nos. 16, 18, 19, 20 (E.D. Va. 2025). The Court also dispels with any further briefing by the parties.

## II.  Standard of Review

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### III. Analysis

The central question posed in Mr. Santos Ramos' Petition is whether he is entitled to a discretionary bond hearing under 8 U.S.C. § 1226(a)[6] or whether he is subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A).[7] Petitioner contends that 8 U.S.C. § 1226 entitles him to a bond hearing. Specifically, Mr. Santos Ramos argues that (1) the discretionary

---

[6] 8 U.S.C. § 1226 provides, in relevant part:

(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

   (1) may continue to detain the arrested alien; and

   (2) may release the alien on—

      (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

      (B) conditional parole.

8 U.S.C. § 1226(a)(1)–(2).

[7] 8 U.S.C. § 1225 provides, in pertinent part:

(b) Inspection of applicants for admission

   (2) Inspection of other aliens

      (A) In general

      Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

detention provisions of 8 U.S.C. § 1226(a) entitle him to a bond hearing, (ECF No. 1 ¶¶ 24–33); and (2) that his Fifth Amendment due process rights bolster his entitlement to such a hearing, (ECF No. 1 ¶¶ 34–35).

In opposition, Respondents rely on their arguments incorporated by this Court from *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va. 2025).[8] Here, as in *Duarte Escobar*, Respondents insist (1) that the Court lacks jurisdiction over the Petition by virtue of two jurisdiction-stripping provisions of the Immigration and Nationality Act ("INA"), (*Duarte*

---

[8] Respondents' arguments have also been raised and decided throughout the country. The vast majority of courts addressing this issue have concluded that 8 U.S.C. § 1226(a) pertains, meaning petitioners like Petitioner should receive a bond hearing. *See Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *4–5 (E.D. Pa. Nov. 18, 2025) (noting that "of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here").

In addition, dozens of courts in the Eastern District of Virginia (including this Court) have rejected Respondents' position on eminently sound bases. *See Velasquez v. Noem*, No. 3:25-cv-998 (MHL), 2026 WL 279226, at *4 n.14 (E.D. Va. Feb. 3, 2026) (collecting thirty cases rejecting Respondents' argument in this District alone).

A small minority of district courts have accepted Respondents' arguments. *See, e.g.*, *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1140–41 (S.D. Cal. 2025); *Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132, 1140–43 (D. Neb. 2025). These decisions do not alter this Court's determination.

Recently, the United States Courts of Appeals for the Fifth Circuit and Eighth Circuit joined these courts. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). These decisions are not binding here. *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 260 (4th Cir. 2020). Moreover, the Court is unpersuaded by their reasoning for many of the reasons cogently set forth in Judge Douglas' dissent in *Buenrostro-Mendez*, which explains that the majority's interpretation risks rendering substantial portions of the statutory scheme superfluous and internally inconsistent. The United States Court of Appeals for the Fourth Circuit recently heard oral argument concerning the applicability to § 1225 to detainees like Petitioner. *See Lopez Garcia v. Guadian*, No. 25-7044, ECF No. 60 (4th Cir. May 5, 2026). Unless and until the Fourth Circuit issues a contrary decision, this Court will continue to reject Respondents' arguments.

*Escobar*, ECF No. 18, at 7–8); (2) that even if the Court has jurisdiction over the Petition, Mr. Santos Ramos' detention is lawful under 8 U.S.C. § 1225's mandatory detention provisions, (*Duarte Escobar*, ECF No. 18, at 8–20); and (3) that Mr. Santos Ramos' constitutional due process rights have not been violated, (*Duarte Escobar*, ECF No. 18, at 20–28).[9]

The parties' arguments as to all challenges raised are substantially similar to others made in recent § 2241 habeas actions in the Eastern District of Virginia, including many cases decided by this Court. *See, e.g., Duarte Escobar*, 807 F. Supp. 3d 564; *Perez-Gomez v. Warden*, No. 3:25-cv-773 (MHL), 2025 WL 3141103 (E.D. Va. Nov. 10, 2025) (rejecting the same arguments made in *Duarte Escobar*); *Contreras-Perez v. Noem*, No. 3:25-cv-882 (MHL), 2025 WL 3281774 (E.D. Va. Nov. 25, 2025) (same); *Campos Flores v. Bondi*, No. 3:25-cv-797 (MHL), 2025 WL 3461551 (E.D. Va. Dec. 2, 2025) (same); *Velasquez v. Noem*, No. 3:26-cv-998 (MHL), 2026 WL 279226 (E.D. Va. Feb. 3, 2026) (same); *Espinoza Camacho v. Perry*, No. 3:26-cv-76 (MHL), 2026 WL 414937 (E.D. Va. Feb. 15, 2026) (same); *Avelar Ramos v. Bondi*, No. 3:26-cv-112 (MHL), 2026 WL 614875 (E.D. Va. Mar. 4, 2026); *Lopez-Diaz v. Crawford*, No. 3:25-cv-1039 (MHL), 2026 WL 625492 (E.D. Va. Mar. 6, 2026) (same); *Pacheco Tum v. Perry*, No. 3:26-cv-153 (MHL), 2026 WL 711964 (E.D. Va. Mar. 13, 2026) (same). Respondents raise no new arguments that would compel a different outcome.

The Court concludes that 8 U.S.C. § 1226(a) and the Fifth Amendment entitle Mr. Santos Ramos to a bond hearing. Accordingly, the Court will grant the Petition.

---

[9] Respondents, in their briefing as incorporated from *Duarte Escobar*, do not argue that Mr. Santos Ramos has failed to exhaust his administrative remedies, and they therefore waive any argument on this point. The Court notes, however, that even had Respondents raised an exhaustion defense, they would not prevail, because exhausting Mr. Santos Ramos' administrative remedies prior to filing his Petition would be futile. *See Duarte Escobar*, 807 F. Supp. 3d at 572.

7

### A.      The Court Has Jurisdiction Over the Petition

As a threshold matter, this Court has jurisdiction to consider Mr. Santos Ramos' Petition. Respondents argue that the Court lacks subject-matter jurisdiction over the Petition because two provisions of the INA strip the Court of jurisdiction over the Petition:  8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(g).  (*Duarte Escobar*, ECF No. 18, at 7–8.)

As this Court held in *Duarte Escobar*, neither 8 U.S.C. §§ 1252(b)(9)[10] nor 1252(g)[11] divests this Court of jurisdiction under 28 U.S.C. § 2241 to review Mr. Santos Ramos' Petition. *Duarte Escobar*, 807 F. Supp. 3d at 572–75; *see also Luna Quispe v. Crawford*, No. 1:25-cv-1471 (AJT), 2025 WL 2783799, at \*2–3 (E.D. Va. Sept. 29, 2025).  The Court has jurisdiction to consider the merits of the Petition and proceeds to the substance of Petitioner's claim.

### B.      Mr. Santos Ramos is Entitled to a Bond Hearing Pursuant to 8 U.S.C. § 1226

With respect to the substance of Petitioner's claim, Mr. Santos Ramos argues that his detention is governed by the discretionary detention provisions of § 1226 rather than the mandatory detention provisions in § 1225(b)(2).  (ECF No. 1 ¶¶ 24–33.)  According to Respondents, Mr. Santos Ramos' detention is lawful under the INA because Mr. Santos Ramos was not legally granted entry into the country and is therefore an "applicant for admission," meaning § 1225(b)(2) governs his detention.  (*Duarte Escobar*, ECF No. 18, at 8–20.)

---

[10] For instance, 8 U.S.C. § 1252(b)(9) does not divest this Court of its habeas jurisdiction because Mr. Santos Ramos does not seek review of a removal order. *Duarte Escobar*, 807 F. Supp. 3d at 573–74 (citing *Jennings v. Rodriguez*, 583 U.S. 294–95 (2018) (plurality opinion)).

[11] 8 U.S.C. § 1252(g) likewise does not divest the Court of its habeas jurisdiction because this case does not involve commencement, adjudication, or execution of any immigration order. *Duarte Escobar*, 807 F. Supp. 3d at 574–75 ("[Section] 1252(g) does not apply 'to *all* claims arising from deportation proceedings.'" (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis added))).

For the reasons stated by this Court in *Duarte Escobar*, as well as the dozens of other decisions issued by courts in this District on the same issue, this Court concludes that Petitioner's detention is governed by 8 U.S.C. § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures. 807 F. Supp. 2d at 575–81. This argument fails.

Mr. Santos Ramos has been present in the United States for over seven years. (*See* ECF No. 1 ¶ 1.) He is thus not an "applicant for admission" subject to the mandatory detention provisions of § 1225 but rather falls within the discretionary detention provisions of § 1226(a) governing aliens who are already in the country. *See Jennings v. Rodriguez*, 583 U.S. 281, 288–90, 303 (2018) (finding that § 1226(a) is the "default rule" governing "aliens already in the country" whereas § 1225 governs "aliens seeking admission into the country").[12] For the reasons

---

[12] The Court observes that, for decades, "Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 n.6 (BIA 2025). But on July 8, 2025, "Acting Director of U.S. Immigration and Customs Enforcement, Todd M. Lyons, issued an internal memorandum explaining that the agency had 'revisited its legal position'" by determining that "[the mandatory detention provisions of section 1225] of the Immigration and Nationality Act (INA), rather than [the discretionary detention provisions of section 1226], is the applicable immigration detention authority for all applicants for admission." *Martinez v. Hyde*, 792 F. Supp. 3d. 211, 217–18 (D. Mass. 2025). The July memorandum characterized, seemingly for the first time, all noncitizens who entered the United States without inspection as doing so "seeking admission," no matter how much time passed between their entrance into the United States and their apprehension by law enforcement.

On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado* in line with Acting Director Lyons' memorandum. "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Soto v. Soto*, 807 F. Supp. 3d 397, 401 (D.N.J. Oct. 22, 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

The Court owes the BIA no deference in its interpretation of the INA and interprets §§ 1225 and 1226 *de novo*. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395–96 (2024). Indeed, the United States District Court for the Central District of California issued a nationwide declaratory judgment and vacatur under the Administrative Procedure Act against ICE's internal policy mandating that immigration detainees remain detained without a bond

set out in *Duarte Escobar*, the plain text of the INA,[13] Supreme Court precedent, district court decisions around the country, and decades of practice support this conclusion. 807 F. Supp. 3d at 575–81. Petitioner is therefore entitled to a bond hearing under § 1226(a) and its implementing regulations.

### C. Mr. Santos Ramos' Fifth Amendment Due Process Rights Have Been Violated

Finally, Petitioner argues that his detention without a bond hearing violates his due process rights under the Fifth Amendment's Due Process Clause. (ECF No. 1 ¶¶ 34–35.) Respondents contend that Petitioner's due process rights are governed only by the INA, rather than the Fifth Amendment's Due Process Clause, and that even if Petitioner is subject to the Fifth Amendment's due process protections, denying him a bond hearing does not violate his constitutional rights.

For the reasons articulated in *Duarte Escobar*, the Court finds that Mr. Santos Ramos' due process rights are governed by the Fifth Amendment and that his continued detention under 8 U.S.C. § 1225 without a bond hearing violates his due process rights. 807 F. Supp. 3d at 581–84. Specifically, the Court finds that all three *Mathews* factors weigh in Mr. Santos Ramos'

hearing. *Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), *judgment stayed in part*, 5:25-cv-1873, ECF No. 129 (C.D. Cal. Mar. 6, 2025). In doing so, the *Bautista* court found that *Matter of Yajure Hurtado* cannot be *controlling* law because it relies on a faulty statutory analysis, which *Bautista* rejected. *Id.* at 1106; *see also Duarte Escobar*, 807 F. Supp. 3d at 580. While the United States Court of Appeals for the Ninth Circuit recently stayed enforcement of the nationwide relief in *Bautista, Bautista v. Santacruz*, 5:25-cv-1873, ECF No. 129 (C.D. Cal. Mar. 6, 2025), the Court agrees with the *Bautista* court's finding.

[13] As this Court explained in *Duarte Escobar*, § 1225 requires that an applicant be "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2). The statute's use of active language suggests that an alien must be taking *active* steps towards "seeking admission" to the United States. Presence in the country is not enough. *Duarte Escobar*, 807 F. Supp. 3d at 576. To find otherwise, as Respondents (again) ask this Court to do, would render other provisions of the INA superfluous. *Id.* at 576–77.

10

favor: (1) he has a strong private interest in remaining free from physical detention; (2) there is a significant risk of erroneous deprivation of his due process rights because he is entitled to a bond hearing under § 1226(a) that he has not received; and, (3) respondents have failed to demonstrate a compelling government interest in detaining Petitioner without a bond hearing. *See Duarte Escobar*, 807 F. Supp. 3d at 581–84 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

**D.      The Proper Remedy for this Violation is to Provide Mr. Santos Ramos with a Bond Hearing During Which Respondents Maintain the Burden of Proof**

Mr. Santos Ramos argues that immediate release would be the appropriate remedy for his unlawful detention. (ECF No. 1 ¶¶ 36–39.) In their response as incorporated from the briefing in *Duarte Escobar*, Respondents assert that a bond hearing is the only appropriate remedy and that at a bond hearing, Mr. Santos Ramos should bear the burden of establishing whether he is a flight risk or poses a risk of danger. (*Duarte Escobar*, ECF No. 18, at 28–29.)

For three reasons, the Court will order Respondents to provide Mr. Santos Ramos with a bond hearing rather than immediate release. But the Court will require Respondents to bear the burden of proof at that bond hearing.

First, ordering a bond hearing allows the Court to tailor its remedy to the specific injury alleged by Mr. Santos Ramos: deprivation of his access to a bond hearing. *Avelar Ramos*, 2026 WL 614875, at *5. Second, providing Mr. Santos Ramos with a bond hearing aligns with the INA's statutory scheme, through which Congress and DHS, in enacting § 1226 and promulgating its implementing regulations, "have determined that an Immigration Judge is best situated to make a determination about whether an alien is a potential danger to the community or is a flight risk." *Id.* at *6. And third, the circumstances in which district courts within the jurisdiction of the United States Court of Appeals for the Fourth Circuit have ordered immediate release instead of a bond hearing are not present here. *Id.* For example, this Court has neither been "confronted

11

with petitioners who have been detained, released, and re-detained by immigration officials[,]" nor with evidence of Respondents' failure to comply with this Court's orders. *See id.* The Court will therefore order Respondents to provide Petitioner with a bond hearing rather than order his immediate release.

The Court will require Respondents to carry the burden of proof at that bond hearing. As this Court explained in *Avelar Ramos*, given Respondents' "abject denial of [Mr. Santos Ramos'] entitlement to a bond hearing, due process calls for additional safeguards to protect that entitlement." 2026 WL 614875, at *7–8.[14] Requiring Respondents to carry the burden of proof is one such safeguard.

Accordingly, the Court will order Respondents to provide Petitioner with a bond hearing during which Respondents will bear the burden of showing whether Mr. Santos Ramos is a danger or a flight risk by clear and convincing evidence.

## IV.  Conclusion

Because § 1226(a) sets for "the default rule" for detaining and removing aliens "already present in the United States," *Jennings*, 583 U.S. at 202, Petitioner's detention is governed by

---

[14] In *Avelar Ramos*, this Court distinguished circumstances like the present—where a noncitizen petitioner detained under § 1226 was denied a bond hearing—from those addressed in the Fourth Circuit's decision in *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022). *Avelar Ramos*, 2026 WL 614875, at *7–8. As this Court explained, the *Miranda* court held that placing the burden of proof on a noncitizen to prove that he or she was not a risk of danger or a risk of flight did not violate due process because the noncitizen was afforded *three opportunities* to seek release from detention. *Id.* (citing *Miranda*, 34 F.4th at 358–65).

The present situation, as in *Avelar Ramos*, differs from that at issue in *Miranda* because Mr. Santos Ramos "has been denied access to a bond hearing entirely." *Id.*; *see also Pineda-Medrano v. Bondi*, No. 1:25-cv-01870 (AJT), 2025 WL 3472152, at *3 n.5 (E.D. Va. Dec. 3, 2025) ("[N]owhere in [*Miranda*] did the Fourth Circuit hold—explicitly or implicitly—that the failure to comport with the procedures contemplated in section 1226(a), including the provision of a bond determination hearing, would also satisfy due process.").

§ 1226(a).  Under § 1226(a) and its implementing regulations, he is entitled to a bond hearing before an Immigration Judge at which the government must prove by clear and convincing evidence that he poses a danger to the community or that he is a flight risk if Respondents seek to continue detaining Mr. Santos Ramos.  8 U.S.C. § 1226(a); *Avelar Ramos*, 2026 WL 614875, at *7–8.  Unless and until Respondents meet that burden, Mr. Santos Ramos' continued detention is unlawful.

For the reasons articulated above, the Court will grant Mr. Santos Ramos' Petition, (ECF No. 1), and order that he be provided a bond hearing with an Immigration Judge pursuant to 8 U.S.C. § 1226(a).

An appropriate Order shall issue.

Date: 6/10/26  
Richmond, Virginia

_____ /s/  
M. Hannah Lauck  
Chief United States District Judge